UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JULIA PEREZ,  					CASE NO. 13-11465

    Plaintiff,				SENIOR U.S. DISTRICT JUDGE
						ARTHUR J. TARNOW
v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [9] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [10]**

Before the Court are Plaintiff's Motion for Summary Judgment [9], and Defendant's Motion for Summary Judgment [10].

Plaintiff seeks reversal of the Commissioner of Social Security's decision and award of benefits, or in the alternative, remand for further proceedings.

For the reasons stated below, Plaintiff's Motion for Summary Judgment [9] is GRANTED IN PART and DENIED IN PART, and Defendant's Motion for Summary Judgment [10] is DENIED.

## I.     Procedural Background

On December 2, 2010, Plaintiff filed for Disability and Disability Insurance Benefits under Title II of the Social Security Act. She asserted that she became unable to work on April 19, 2010. The Social Security Administration denied Plaintiff's application on February 2, 2011. Plaintiff then requested an administrative hearing, and on November 14, 2011, she testified before Administrative Law Judge (ALJ) Tammy Thames. In a December 8, 2011 decision, the ALJ found that Plaintiff was not disabled within the meaning of § 216(i) and § 223(d) of the Social Security Act. The ALJ's decision became the final decision when the Appeals Council denied Plaintiff's request for review. Plaintiff filed this suit challenging the denial of her application for benefits on April 1, 2013.

## II.     Factual Background

On August 12, 2009, Plaintiff experienced an injury to her right elbow upon lifting a heavy casting as a bench grinder at Saginaw Gray Iron Foundry, a subsidiary of General Motors. Dr. Schwartz, a plant doctor, placed Plaintiff back to work with restrictions preventing the use of her right arm. Plaintiff continued working with the restrictions for approximately one month before being placed on

sick leave for inability to perform her duties. These duties included repeatedly flexing and extending her right wrist.

In the months following the injury, Plaintiff underwent conservative care, including cortisone injections and physical therapy, along with medication for nerve pain.

In July 2010, Plaintiff continued to experience pain and weakness in her right elbow and fingers, as well as increased sensitivity in her right hand. An initial electromyography (EMG) study conducted on July 19 was negative for any type of damage. Further EMG and nerve conduction studies revealed no abnormalities. On July 28, an examination and MRI scan conducted by Dr. James Jesko, an orthopedic surgeon, revealed chronic tendinitis and a partial-thickness tear. That same day, Dr. Jesko diagnosed Plaintiff with chronic right lateral epicondylitis (inflammation of the epicondyle of the humerus and surrounding tissues).

The ineffectiveness of conservative treatment and Plaintiff's unavailing symptoms lead Dr. Jesko to recommend surgery. On August 10, 2010, Dr. Jesko performed tenodesis of the right elbow tendon region and excision of a bone spur. Dr. Jesko stated that Plaintiff was to refrain from heavy strength training or lifting with her right hand. By September 13, 2010, Plaintiff attended eight physical therapy sessions, during which time the treating physical therapist reported a slight

decrease in the mobility of her right elbow extension. At that time, Plaintiff experienced tenderness at the surgical scar, and achiness with activity. At discharge on September 27, 2010, Plaintiff had full range of motion and flexibility of her right elbow extension, full forearm pronation and supination, and elbow flexion on the right side to 140 degrees. The physical therapist recorded a fair to good prognosis for continued recovery with a home exercise program.

On November 22, 2010, Dr. Jesko stated that Plaintiff made "poor" progress in the months following her surgery, having an improved range of elbow motion, but with pain inhibiting gripping, and discomfort upon movement. She experienced numbness and diminished sensation in her right hand and fingers, and subjective reports of pain with range of motion testing.

In December 2010, four months after surgery, Plaintiff's range of motion improved, but her discomfort and diminished sensation in her fingers persisted. Her response to muscle testing was also weak. Dr. Jesko requested a repeat EMG study in efforts to attempt to explain Ms. Perez's symptoms. An EMG study conducted by Dr. David Wiersema did not explain the extent of the patient's symptoms. While Dr. Wiersema noted that Plaintiff did not seem to have a sense of vibration in her right upper and lower extremities, and her sensation to pinprick was altered, he was unable to establish an etiology for these symptoms.

Upon her recheck with Dr. Jesko in January 2011, Plaintiff complained of loss of sensation in her entire right hand, soreness, and tenderness. Dr. Jesko stated that, although her strength had improved, she experienced pain upon resisted extension of the wrist and fingers, and opined that Plaintiff should not use her right arm.

In February 2011, Dr. Iftikhar Khan, a neurologist, evaluated Plaintiff's persistent numbness in her right forearm and fingers. While the severity of her pain was reduced, Plaintiff complained of weakness of grip strength of her right hand causing her to drop objects, as well as swelling and tenderness of the right elbow region. Dr. Khan stated that Ms. Perez had decreased vibration and increased temperature sensitivity in her right hand, but there was no correlative EMG abnormality to explain the numbness in Plaintiff's right upper arm.

Upon noting no improvement in Plaintiff's condition, Dr. Jesko referred Ms. Perez for a neurologic evaluation with Dr. Paul LaClair, and noted that she could use her right hand as tolerated. Plaintiff followed up with Dr. LaClair in June 2011, and expressed that her pain was not remedied by surgery or alleviated by physical therapy. She complained of weakness in her right arm, as well as significant numbness throughout her entire hand. Dr. LaClair determined that Plaintiff's range of motion in the shoulder, elbow, and wrist was self-limited during the testing. Dr.

LaClair further stated that the pain she reported experiencing during several provocative tests was not localized to the area that was being tested, and concluded that he could not explain the patient's symptoms. Dr. LaClair referred Plaintiff for blood tests to evaluate the potential for connective tissue disease.

In May 2011, Plaintiff visited Dr. Carlos Diola for a rheumatology consultation. She complained of worsening numbness and tingling in her hands, and complete loss of strength in her right arm. Dr. Diola diagnosed Ms. Perez with polyarthralgia and suspected soft tissue rheumatism with hand and arm tendinitis, likely from overuse. Dr. Diola found that the EMG studies he conducted were not beneficial to clarifying the etiology of his diagnosis of hand paresthesias.

During her next visit to Dr. LaClair in June 2011, Ms. Perez mentioned experiencing tingling and tenderness throughout her right arm. Dr. LaClair determined that Ms. Perez was developing diffuse myofascial pain and was not responsive to the medication she had been taking since February 2011. Dr. LaClair prescribed a 50-75 mg dose of Lyrica.

In August 2011, Ms. Perez was examined by a specialist, Dr. Jeffrey Lawton. Dr. Lawton noted early arthritic changes in Ms. Perez's fingers, carpal tunnel compression, and exacerbation of pain in her elbow upon flexing of the wrist. Dr. Lawton advised Plaintiff against further surgery, as it would be

6

unpredictable, and instead recommended nonsteroidal anti-inflammatories. Dr. Lawton also referred Plaintiff for an evaluation of neurologic symptoms, in consideration of a possible diagnosis of fibromyalgia.

In September 2011, Plaintiff was evaluated by the company physician, who found she could not return to work.

Since her injury, Plaintiff reported having difficulty with carrying out activities of daily living. She relies on her daughter's assistance for getting dressed and bathing. Cooking and cleaning are also challenging due to her right hand dominance.

The ALJ held that Plaintiff was not under a disability within the meaning of §216(i) and §223(d) of the Social Security Act. The ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset of her alleged disability on April 19, 2010. In considering the medical evidence and Plaintiff's testimony, the ALJ found that Plaintiff retained the Residual Functional Capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b), as her symptoms were inconsistent with objective medical evidence. The ALJ stipulated that Plaintiff has limited mobility in many respects, but could frequently handle and finger with her right upper arm.

The ALJ asked the Vocational Expert (VE) a hypothetical question regarding what work could be performed by a person with Plaintiff's vocational profile who was limited to: occasionally lifting or carrying twenty pounds, frequently lifting and carrying up to ten pounds, using the right-upper extremity for guiding purposes only, reaching in all directions, and frequently handling, feeling and fingering with the right-upper extremity. The hypothetical question added that the person was also restricted to: occasional climbing of ramps and stairs, no climbing ladders, ropes, or scaffolds, and could not perform repetitive push pull activities with the upper right arm. Based on the hypothetical question, the ALJ found that Plaintiff was incapable of performing her past relevant work as a bench grinder. The VE testified that Plaintiff could satisfy occupational requirements of a cashier, sales attendant, and small products assembler.

### III.   Standard of Review

A motion for summary judgment is granted when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is proper when a party who bears the burden of proof at trial fails to establish the existence of an element essential to its case. *Celotex Corp. v Catrett*, 477 U.S. 317, 326 (1987). Facts and inferences must be viewed in the light most favorable to the party opposing the motion.

8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986). However, the non-moving party must present "specific facts showing that there is a genuine issue for trial" that demonstrate that there is more than "some metaphysical doubt as to the material facts." *Aetna Cas. & Sur. Co. v. Dow Chem. Co*., 10 F. Supp. 2d 800 (E.D. Mich. 1998) (internal citations omitted).

This Court has original jurisdiction to review the ALJ's decision, pursuant to 42 U.S.C. § 405(g). The ALJ's "factual findings are conclusive if supported by substantial evidence." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 243 (6th Cir. 1987). The review of the ALJ's decision is limited to "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Longworth v. Comm'r of Soc. Sec*., 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted). This Court's review is limited to an examination of the record. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007).

The substantial evidence standard is met if there is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241(6th Cir. 2007) (internal quotation marks omitted). It is such evidence that a "reasonable mind might accept as adequate to support a conclusion." *Id*. It is not imperative to discuss every piece of evidence in the administrative record in order

to reach a finding. *Kornecky v. Comm'r of Soc. Sec.*, 167 F.App'x 496, 508 (6th Cir. 2006). This Court need not "try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. Disability Framework

Disability Insurance Benefits are available only to those who have a "disability," defined as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Social Security Administration has enacted a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. § 404.1520(a). If the administrative agency determines that an individual is not disabled at a step of the evaluation, the evaluation will not proceed to the next step.

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits…physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Taylor v. Comm'r of Soc. Sec.*, 2013 U.S. Dist. LEXIS 136649, at *16-17 (E.D. Mich. Apr. 26, 2013). "The burden of proof is on the claimant throughout the first four steps . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Before considering step four, the administrative agency must first determine the individual's RFC, which relates to the ability to do physical and mental work activities despite limitations from impairment. 20 C.F.R. § 404.1520(e). The RFC evaluation determines whether a claimant can perform past relevant work or adjust to other work. 20 C.F.R. § 404.1520(f). If a claimant is found unable to adjust to other work, he or she is said to be disabled. 20 C.F.R. § 404.1520(g).

Where pain is alleged, the RFC assessment must contain a thorough discussion of the objective medical and other evidence, as well as a resolution of inconsistencies in the evidence as a whole. S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. 1996). The evaluation must also set forth a logical explanation of the effects of the symptoms on an individual's ability to work, and discuss whether symptom-related functional limitations can or cannot reasonably be accepted as consistent with the medical and other evidence. *Id.* at *2.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset of the alleged disability on April 19, 2010. At step two, the ALJ found that Plaintiff had the following severe impairment: chronic lateral epicondylitis of the right elbow. In considering the medical evidence and Plaintiff's testimony, the ALJ found that Plaintiff retained the RFC to perform light work including lifting no more than 20 pounds at a time, and frequent walking or standing. 20 C.F.R. § 404.1567(b). The ALJ found that Plaintiff would have limited mobility in many respects, but could frequently handle and finger with her right upper extremity. At step four, the ALJ found that the Plaintiff was incapable of performing her past relevant work as a bench grinder, but the VE testified that she could satisfy occupational requirements of a cashier, sales attendant, and small products assembler. The ALJ found that Plaintiff's statements concerning her

12

symptoms were not credible to the extent that they were inconsistent with the RFC assessment.

## V. Analysis

Plaintiff asserts that the ALJ's decision should be reversed or remanded, as the RFC and the hypothetical question used to evaluate Ms. Perez's impairment are not supported by substantial evidence. Plaintiff contends that substantial evidence as to the intensity, persistence, and limiting effects of her symptoms cannot be ignored in favor of the VE's testimony. Specifically, Plaintiff argues that the reasoning used to support the finding of her lack of credibility is not substantiated. Plaintiff further contends that the ALJ relied solely on Dr. LaClair's consultative opinion, which was inconsistent with other substantial evidence in the record. Plaintiff asserts that the ALJ failed to explain why the findings of other treating physicians were not accorded controlling weight.

Defendant asserts that the hypothetical question reflected the RFC finding, which was supported by substantial evidence. Defendant contends that Plaintiff's complaints of right upper extremity limitations conflicted with evidence showing that her surgery and physical therapy were successful, and were therefore discounted by the ALJ as not credible. Defendant states that the fact that Dr. LaClair's opinion was rendered during an initial consultation rather than as a part

of an ongoing treatment relationship is immaterial, as his opinion was not in conflict with other medical opinions or evidence.

### A. Opinion of Treating-Physician Dr. LaClair

Generally, more weight is accorded to opinions from "treating source[s]" that are able to "provide a detailed longitudinal picture of [the] medical impairments and may bring a unique perspective to the medical evidence" that is unobtainable through objective medical findings. 20 C.F.R. §404.1527(d)(2). Where the ALJ finds that a treating physician's opinion is not entitled controlling weight, "'there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference.'" *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009) (quoting *Rogers*, 486 F.3d at 242).

The treating-source rule also requires that the ALJ set out "good reasons" for the weight she assigns to a particular treating-source opinion. *See e.g., Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544; *see also* S.S.R. 96-2p, at *5 (providing that a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record.") While physicians' opinions on the issue of disability are not given any special significance, there is no authority precluding an ALJ from considering a physician's determination. S.S.R. 96-5p, at *2. Though there is no requirement

14

that the ALJ discuss every piece of evidence in the administrative record, the Judge must "conduct the balancing of factors to determine what weight should be accorded these treating source opinions. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

In addition to the treating-source opinion, the ALJ must apply a test for evaluating Plaintiff's subjective complaints of pain. 20 C.F.R. §404.1529(c). The test gives consideration to the duration and intensity of pain, precipitating or aggravating factors, the effectiveness of medication taken to alleviate the pain, and any other factors concerning the Plaintiff's functional limitations and restrictions due to pain. *Id.* An ALJ may "properly consider the credibility of a claimant" in view of the objective medical evidence when making a determination of disability. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *Tyra v. Sec'y of Health and Human Servs.*, 869 F.2d 1024, 1030 (6th Cir. 1990).

The ALJ accorded great weight to Dr. LaClair's opinion, stating that his finding was consistent with a preponderance of the medical evidence and the opinions of Plaintiff's treating physicians. The ALJ also remarked that Dr. LaClair had established an ongoing treatment relationship with the Plaintiff.

The question now before the Court is whether substantial evidence supports the ALJ's decision to give Dr. LaClair's opinion "great weight." *Rogers*, 486 F.3d

15

at 241. The Court finds that substantial evidence does not support the ALJ's determination that the medical record was in line with Dr. LaClair's opinion.

The administrative record establishes that Dr. LaClair's opinion was inconsistent with the other treating physicians who repeatedly referred to Plaintiff's severe pain and other symptoms. Dr. Jesko noted Plaintiff was progressing poorly following her surgery. Dr. Wiersema noted that Plaintiff lacked a sense of vibration in her right arm, which was corroborated by Dr. Khan. Dr. Diola also diagnosed Plaintiff with hand parasthesias and tendinitis. In all, the limiting effects of Plaintiff's impairments have been noted by all other treating physicians.

Dr. LaClair's opinion that Plaintiff did not put forth a good effort on testing, and that there were "no real objective finding[s]" in his examination does not diminish other physicians' objective medical evidence to the contrary. The record reflects that Dr. Khan and Dr. Diola opined that there was no explanation for Plaintiff's numbness and hand parasthesias. While they were unable to reach a unifying diagnosis, neither specialist expressed skepticism of Plaintiff's symptoms. Likewise, Dr. Jesko's statement that Plaintiff should use her arm as tolerated is not in conflict with the medical evidence. Therefore, the ALJ's finding that Dr.

LaClair's opinion is consistent with and substantially supported by medical evidence is erroneous.

Further, Dr. LaClair was not Plaintiff's primary care physician. Instead, Plaintiff obtained his medical expertise while under the care of Dr. Jesko. The ALJ acknowledged that Plaintiff's longest treating physician, Dr. Jesko, who monitored Plaintiff's condition for over seven months, determined that Plaintiff's symptoms prior to and following surgery were genuine and "could reasonably be expected to cause the alleged symptoms." The ALJ did not conduct a balancing of factors, but rather based its RFC assessment and final determination on Dr. LaClair's finding.

In addition, according great weight to Dr. LaClair's opinion runs contrary to the regulations on evaluating opinion evidence, which recognize that opinions obtained during a consultative examination may not provide a detailed record of an individual's impairment. *See* 20 C.F.R. § 404.1527(d)(2). Indeed, the medical record is replete with examinations and tests showing Plaintiff's persistent and debilitating symptoms over the course of approximately two years, which rendered Plaintiff unable to conduct daily activities and work-related obligations. Further, Plaintiff's company physician determined she could not return to work nearly three months after Dr. LaClair's evaluation. The ALJ's determination that Dr. LaClair's opinion was consistent with the record is erroneous in so far as it does not reflect

17

substantial evidence on the record, including the findings of other specialists and Plaintiff's primary care physician.

Moreover, the ALJ did not apply the test set out in 20 C.F.R. § 404.1529(c) for evaluating Plaintiff's subjective complaints of pain. The vast majority of the factors support Plaintiff's complaints of right upper extremity limitations. Plaintiff's credibility is supported by the fact that her alleged disability can be traced back to a specific onset date, and that she had a work history spanning over a decade. The only conflicting factor is Dr. LaClair's opinion that Plaintiff is not disabled. However, this factor does not constitute substantial evidence to support a rejection of Plaintiff's credibility. As such, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms should have been taken into account.

Therefore, substantial evidence does not support the ALJ's decision to give the opinion of Dr. LaClair "great weight."

*B. Residual Functional Capacity Assessment*

Once it is determined that Plaintiff cannot perform her past work, the burden of proof shifts to the Commissioner to show that Plaintiff can perform other work that exists in significant numbers. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994). "To be considered capable of performing a full or wide range of light

work, [one] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b). If a VE's testimony is to carry the burden, it must be given in response to a "hypothetical question that accurately describes the Plaintiff in all significant, relevant respects." *Felisky,* 35 F.3d 1036. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. S.S.R. 96-8p at *7.

The ALJ erroneously accorded disproportionate weight to the opinion of consulting physician Dr. LaClair, which lead to an incorrect RFC finding. The faulty RFC evaluation deemed Plaintiff able to frequently reach in all directions, and handle and feel with her right upper extremity. This lead the VE to conclude that Plaintiff possesses the RFC to perform activities required of a cashier, sales attendant, or small products assembler, as the RFC assessment indicated that she was able to use her right arm frequently. Because the RFC was not supported by substantial evidence, the hypothetical question presented to the VE was inaccurate, as was the VE's resulting testimony.

### VI. Conclusion

For the reasons set forth above, Plaintiff's Motion for Summary Judgment [9] is GRANTED IN PART and DENIED IN PART, and Defendant's Motion for Summary Judgment [10] is DENIED.

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment [9] is **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [10] is **DENIED**.

**IT IS FURTHER ORDERED** that this case is remanded for further proceedings consistent with this order.

**SO ORDERED.**

                                                                    s/Arthur J. Tarnow
                                                                    ARTHUR J. TARNOW
                                                                    SENIOR U.S. DISTRICT JUDGE

Dated: September 16, 2014